IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALFONZA GACHETT, #160757, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:09cv117-CSC |
| | ) | (WO) |
| | ) | |
| RAYMOND ROGERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER OF THE MAGISTRATE JUDGE**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Alfonza

Gachett, a state inmate.  The defendants are the Bullock County Sheriff Raymond Rodgers,

Chief Deputy Jailer Curtis Pritchett, and the Bullock County Commission.  Gachett asserts

that on February 13, 2008, during his confinement in the Bullock County Detention Facility,

the defendants acted with deliberate indifference to his safety by failing to protect him from

"[him]self and others."  (Doc. No. 1, p. 2.)  He complains that a fight with another inmate

occurred as the result of dangerous conditions of confinement in existence throughout the

Bullock County Detention Facility.[1]

The defendants filed a written report and supporting evidentiary materials addressing

---

[1] In his response to the defendants' motion for summary judgment, the plaintiff argues that the
defendants failed to comply with Alabama law governing their responsibilities for the safekeeping of inmates.
To the extent that the plaintiff raises state law claims, the court's exercise of supplemental jurisdiction over
the state law claims is discretionary.   Under 28 U.S.C. § 1367(c)(3), the court may "decline to exercise
supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims over which it
has original jurisdiction  . . . " The court will dismiss any state law claims without prejudice.

Gachett's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' written report as a motion for summary judgment.  *Order of February 20, 2009 – Doc. No. 4*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation to rule omitted).  The movant may meet this burden by presenting evidence indicating there is no

dispute of material fact or by showing  that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of a genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with evidence beyond the pleadings, that a genuine issue material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324 (non-movant must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"); FED.R.CIV.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 536-37 (2006).  Consequently, to survive the defendants' properly supported motion for summary judgment, Gachett is required to produce "sufficient

[favorable] evidence" which would be admissible at trial supporting his claims of various constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in

favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Serv.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to

admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Gachett fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II.  FACTS[2]

The Bullock County Detention Facility is a small jail with a maximum capacity of 28 inmates. (Defs' Ex. D, p. 2.) At various times, only one officer is present in the jail. (*Id.*) On these occasions, the jailer observes the inmates in the central communications center,

---

[2] The facts are gleaned from the complaint, the incident report complied on the February 13, 2008 incident, the defendants' evidentiary materials, and the responses filed by the plaintiff.

which includes video surveillance of each cellblock and a voice communication system. (*Id*.)

During the evening of February 13, 2008, Dorothy Thomas ("Jailer Thomas") was the only jailer in the Bullock County Detention Facility. (Defs' Ex. E.) While Jailer Thomas was stationed in the central communications center, Gachett and Eric Harrison ("Harrison"), another inmate, began arguing about a seat in the day room in cellblock B. (Defs' Ex. I.) Harrison grabbed Gachett and they began fighting for one or two minutes. (*Id*; Defs' Ex H, p. 2.) Three or four other inmates in the day room attempted to stop the fight. (*Id*.; Defs' Ex. E, p. 2.) Jailer Thomas used the intercom system to command the inmates to stop fighting. (Defs' Ex. E, p. 2.)

Harrison walked out of the room and Gachett followed him into his cell. (Defs' Ex. I.) Harrison closed the cell door and the two inmates continued fighting less than a minute. (*Id*.; Defs' Ex. H, pp. 1-2.) During the fight, Harrison bit off Gachett's finger and said, "You're not going to use that again." (Doc. No. 1, p. 2; Defs' Ex. H, p. 2.) Upon learning from other inmates that the fight had continued and that Gachett had suffered an injury, Jailer Thomas remained in the central communications center and radioed Deputy J.C. Faulkner and the Union Springs Police Department for assistance. (Defs' Ex. E, p. 2; Defs' Ex. F; Defs' Ex. I.) Shortly thereafter, Sheriff Rodgers, Chief Deputy Jailer Pritchett, and Deputy Faulkner arrived on the scene. (Defs' Ex. F; Defs' Ex. G, Defs' Ex. I.) Deputy Faulkner transported Gachett to the hospital. (Defs' Ex. F; Defs' Ex. I.)

### III. DISCUSSION

## A. The Bullock County Commission

The plaintiff names the Bullock County Commission as a defendant.  To the extent the plaintiff seeks to hold the Commission liable under 42 U.S.C. § 1983 for actions of the sheriff regarding the daily operation of the Bullock County Detention Facility or policies implemented by the sheriff regarding the facility's operation, he is entitled to no relief.  "A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.' *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (*citing Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978))."  *Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir. 1998). Consequently, "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control."  *Id.* 1292.  In deciding whether a county commission is liable under § 1983, "[a] court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'"  *McMillian v. Monroe County*, 520 U.S. 781, 784-785 (1997) (*quoting Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989)).  State law is well settled that "an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail." *Turquitt*, 137 F.3d at 1288.[3]  As is clear from the foregoing, "Alabama sheriffs

---

[3] Under all facets of Alabama law, a county sheriff acts as a state officer "when supervising inmates and otherwise operating the county jails."  *Turquitt*, 137 F.3d at 1289; *Parker v. Amerson*, 519 So.2d 442 (Ala. 1987)

are not county policymakers in their daily management of county jails." *Turquitt*, 137 F.3d at 1292. "For § 1983 liability to attach to a county [and/or its commissioners], the policy at issue must have been made by a person who exercises final authority on behalf of the county with respect to that policy. *See McMillian*, 520 U.S. at [784-785], 117 S.Ct. at 1736. Alabama law, however, clearly demonstrates that sheriffs possess only state policymaking authority when running the day-to-day affairs of a jail. *See Turquitt*, 137 F.3d at 1291-92." *Vinson v. Clarke County*, 10 F. Supp. 2d 1282, 1295-1296 (S.D. Ala. 1998). Moreover, a county commission and its individual members are entitled to absolute immunity under § 1983 for claims arising from the appropriation of funds for the maintenance of a county jail. *Woods v. Garner*, 132 F.3d 1417, 1420 (11th Cir. 1998). Thus, the plaintiff's claims against the Bullock County Commission with respect to claims related to the daily operation of the Bullock County Detention Facility are due to be dismissed in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

## B.  Absolute Immunity Under the Eleventh Amendment[4]

To the extent Gachett sues Sheriff Rodgers and Chief Deputy Jailer Pritchett in their official capacities, they are immune from monetary damages. Official capacity lawsuits are

---

("A sheriff is an executive officer of the State of Alabama" and as such "is not an employee of a county for the purposes of imposing liability on the county."); *Ala. Code* § 14-6-1 (a sheriff has "the legal custody and charge of the jail in his county and all prisoners committed thereto."); *King v. Colbert County*, 620 So.2d 623, 625 (Ala. 1993) (*Ala. Code* § 14-6-1 establishes that "the sheriff's authority over the jail is totally independent of the [county commission].)"

[4]Eleventh Amendment immunity does not foreclose suits for equitable, i.e., injunctive and/or declaratory, relief; rather, if applicable, it forecloses suits for compensable damage awards.

"in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).   Unquestionably, a county sheriff and his staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates county sheriff as member of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).  Thus, as state officials, Sheriff Rodgers and Chief Deputy Jailer Pritchett are entitled to absolute immunity from the plaintiff's claims for monetary damages asserted against them in their official capacities.[5]

---

[5] The defendants also argue that the claims against them should be dismissed because Gachett failed to exhaust his administrative remedies by submitting a grievance to the Sheriff and/or Chief Deputy Jailer. The defendants concede that the Bullock County Detention Facility did not have a written grievance procedure in place at the time of the attack. (Defs' Ex. N, p. 3.)  The defendants, however, assert that inmates are permitted to personally complain to the Chief Deputy Jailer or other jailers about a problem.  (*Id.*) Because there is no evidence that Gachett was actually aware of a verbal grievance policy, this court will not

## C.  Individual Capacity Claims – Failure to Protect

Gachett alleges that Sheriff Rodgers and Chief Deputy Jailer Pritchett failed to protect him from an attack by inmate Harrison.  Specifically, Gachett argues that Sheriff Rodgers and Chief Deputy Jailer Pritchett enacted policies which created dangerous conditions with insufficient security and these conditions placed his life and the lives of other inmates in jeopardy.  (Doc. No. 1, p. 3.)  In relation to this claim, Gachett asserts that the assignment of one jailer in the communications center to supervise all of the numerous inmates in the jail is a dangerous condition and that this lack of security caused him to be attacked by another inmate.

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.[6]  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "It

dismiss this case on the basis of Gachett's failure to exhaust his administrative remedies.

[6] The court is unable to determine whether the actions about which Gachett complains relate to incidents which occurred during his confinement as a pre-trial detainee or as a state inmate.  Nevertheless, regardless of his status, the applicable standard of review remains the same.  *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861 (1979); *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners....  However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. De Kalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S. Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.   A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).  A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference....  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added).  "Proof that the defendant should have perceived the risk, but did not, is insufficient." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511

U.S. at 838); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11ᵗʰ Cir. 1996) (quoting *Farmer*, 511 U.S. at 838) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11ᵗʰ Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11ᵗʰ Cir. 1990) (citations and internal quotations omitted); *Rich v. Bruce*, 129 F.3d 336, 339-340 (4ᵗʰ Cir. 1997) (unless a prison official actually makes the inference that a substantial risk of serious harm exists, he does not act with deliberate indifference even though his actions violate prison regulations or can be described as stupid and lazy).

As the foregoing explication makes clear, "[m]erely negligent failure to protect an

13

inmate from attack does not justify liability under section 1983." *Brown*, 894 F.2d at 1537. Thus, in order to survive summary judgment on his deliberate indifference claims, Gachett is required to produce sufficient evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries. *Farmer*, 511 U.S. at 837-838; *Marsh*, 268 F.3d 1028-1029; *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

First, the court notes that Gachett does not assert that the named defendants were personally involved in the attack against him. The law is well settled that defendants "can have no respondeat superior [or vicarious] liability for a section 1983 claim." *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (In establishing liability under § 1983, a prisoner cannot

14

rely on theories of vicarious liability or respondeat superior.).  Thus, Sheriff Rodgers and Chief Deputy Jailer Pritchett are liable for challenged actions of other officers only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

In the absence of evidence of personal participation, the correctional defendants may only be held liable if their actions bear a causal relationship to this purported violation of Gachett's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of these defendants, Gachett must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so. . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Sheriff Rodgers and Chief Deputy Jailer Pritchett as supervisory officials] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates Gachett has failed to meet this burden.

(i) Causal Relationship Test.

The record before the court contains no evidence to support an inference that Sheriff Rodgers or Chief Deputy Jailer Pritchett directed jail personnel to act unlawfully or knew

15

that jail personnel would act unlawfully and failed to stop such actions. Gachett has likewise failed to show a history of widespread abuse at the Bullock County Detention Facility. "'The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.' ... Furthermore, to be sufficient to notify the supervisor, the deprivations must not only be widespread, they also 'must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'" *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006), *cert. denied*, 550 U.S.956, 127 S.Ct. 2428, 167 L.Ed.2d 1129 (2007) (citations omitted). Gachett presents no evidence of widespread, obvious, flagrant, or rampant problems of inmate-on-inmate assaults in the face of which Sheriff Rodgers and Chief Deputy Jailer Pritchett failed to take corrective action. Consequently, there is nothing before the court sufficient to establish the requisite causal connection.

(ii) Policies and General Conditions.

Gachett alleges Sheriff Rodgers and Chief Deputy Jailer Pritchett violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to ensure his physical safety in an environment of overcrowding and understaffing which provided an opportunity for Harrison to attack him. Gachett further complains that the correctional defendants' policies do not adequately protect the inmates from inmate-on-inmate violence.

The defendants deny that the attack on Gachett resulted from overcrowding or a lack of sufficient staffing. With respect to the attack by Harrison, the defendants assert that this isolated incident occurred because Gachett "went too far with the joking about

16

homosexuality."  (Defs' Ex. H, p. 1.)  The evidentiary materials indicate that no more than 20 to 25 inmates were in the jail.  Thus, the jail was not overcrowded beyond its capacity during the fight between Gachett and Harrison.   Jailer Thomas was in the central communications center monitoring Cellblock B, thereby providing security in the jail at the time of the attack on Gachett.  Although the defendants concede that the jail is not at a full staffing level at times, they argue that these conditions did not cause the attack on Gachett.  And that there are policies in place which ensure the safety of jailers and inmates during a disturbance.

The Bullock County Detention Facility's policy is "to respond to riots and/or disturbances in the jail in a manner designed to help prevent the escalation of the situation, to gain control of the situation and to prevent injuries [to the] staff, visitors and inmates as well as damage to property."  (Attach. to Doc. No. 10, Defs' Ex. B.)  The general policy is as follows:

> In any disturbance, action must quickly control the situation before it escalates into something more serious.  All members of the jail staff should watch for signs of any impending disturbance, such as:
>
> - significant changes in inmates behavior patterns
> - a sharp increase in rule violations
> - a sudden reduction of inmate visitation
> - testing or challenging authority by inmates
> - general hoarding of commissary items, especially food items
> - a sudden decrease in program participation
> - hunger strike
>
> If any of the above occurs, it does not necessarily mean that a

17

disturbance is planned.   However, they may be signs of
impending problems and should not be ignored.

The existence of any or all of the above should be brought to the
attention of the shift supervisor and Jail Administrator at the
earliest possible time.

In any disturbance, jail staff may use only weapons approved by
the Sheriff [or] Chief Deputy. . . .

(*Id.*)  In addition, the jail's disturbance policy provides as follows:

The officer supervising an area where a minor disturbance
occurs should try to stabilize the situation before it escalates.
Every attempt should be made to isolate the inmates involved
before others become involved.

If the officer has any doubt as to whether he/she will need
assistance in stabilizing the situation, he/she should call for
backup before making any attempts to control the situation.

When he becomes aware of the situation, the shift supervisor or
Jail Administrator should decide if the jail needs to be locked
down.   Any lockdown should continue until the situation is
completely stabilized and it is determined by the Jail
Administrator that it is safe to cancel the lockdown.

Once the situation is stabilized, the jail should return to normal
operations.

Any officer involved in a minor disturbance, either as a
participant or a witness, should provide written documentation,
listing all details, to the Jail Administrator prior to leaving their
shift.

(Attach. to Doc. No. 10, Defs' Ex. B.)

The undisputed evidentiary materials indicate that the jailer on duty followed the

disturbance policy by attempting to stabilize the situation by ordering the inmates to stop

fighting and calling for assistance immediately upon learning that the fight had continued and that Gachett had suffered an injury.  Gachett argues that the lack of a jailer's presence in Cellblock B or additional staffing throughout the jail resulted in a substantial risk of harm to him and other inmates.

With respect to the objective element of Gachett's Eighth Amendment claim, Gachett must show that the conditions under which he was incarcerated presented "a substantial risk of serious harm" to him, *Farmer*, 511 U.S. at 834, to which the defendants responded in an objectively unreasonable manner. *Marsh*, 268 F.3d at 1028-1029.  In addressing whether a substantial risk of serious harm exists, "[t]his objective standard 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,"' but must be balanced against competing penological goals." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted).  Similarly, a court must remain mindful that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).  While "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm[,] 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment. . . .'" *Purcell*, 400 F.3d at 1320 (internal citation omitted) (granting summary judgment for sheriff and jail administrator where plaintiff failed to present evidence that conditions at the jail rose to the level of a constitutional violation, despite the fact that inmates were allowed to keep money in their cells; inmates were allowed to play cards and gamble; the physical layout of the jail hindered guards from seeing into certain cells at night from the control tower; and there was a history

19

of isolated, inmate-on-inmate fights).

Here, Gachett presents no evidence that the staff shortage actually posed an objectively substantial risk of serious harm to him.  Although the evidentiary materials indicate that there have been isolated incidents of inmate-on-inmate violence in the Bullock County Detention Facility, Gachett fails to demonstrate that these acts resulted from overcrowding, understaffing or deficient policies.  Moreover, the evidence submitted by Gachett falls woefully short of establishing exposure to anything "even approaching 'the constant threat of violence.'"  *Purcell*, 400 F.3d at 1321.  Therefore, when viewing the evidence in a light most favorable to Gachett, the court concludes that the conditions under which he was incarcerated failed to pose a substantial risk of serious harm so as to satisfy the objective element of his Eighth Amendment claim.

Gachett likewise fails to advance sufficient proof that the defendants were subjectively, deliberately indifferent to any risk of serious harm.  Gachett has not shown these defendants were subjectively aware that a substantial risk of serious harm existed and, with such knowledge, "knowingly or recklessly" declined to take action to prevent the perceived  harm.  *LaMarca*, 995 F.2d at 1535; *Marsh*, 268 F.3d at 1028 (a constitutional violation occurs only when the prison official is subjectively aware of a substantial risk of serious harm and the official fails to respond to the risk in a reasonable manner). As discussed above, Gachett has failed to present sufficient evidence that the conditions at the Bullock County Detention Facility actually posed a substantial risk of serious harm to him. Although it is undisputed that inmate assaults occur in the correctional system, the record

20

fails to show "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Farmer*, 511 U.S. at 842 (internal quotation marks omitted).   Even if the jail was experiencing conditions of overcrowding and/or understaffing at the time of the assault on Gachett, such allegations are insufficient to establish that the defendants knew a substantial risk of serious harm existed and, with such knowledge, deliberately failed to prevent the harm.   The requisite element of subjective awareness on the part of Sheriff Rodgers and Chief Deputy Jailer Pritchett is therefore absent in this case.   *Carter*, 352 F.3d at 1350.

Finally, Gachett fails to show that actions, orders, customs, policies, or breach of any state policy making duties by Sheriff Rodgers and Chief Deputy Jailer Pritchett proximately caused the deprivation of his constitutional rights.   Gachett has likewise presented no evidence, substantially probative or otherwise, that the attack by Harrison was the proximate result of a lack of security or overcrowded conditions.   Thus, the court finds Gachett's evidence insufficient to satisfy the causation element of his Eighth Amendment claim.

While it is unfortunate that Gachett suffered an assault at the hands of another inmate during his incarceration, the record is completely devoid of evidence that the assaults occurred due to the deliberate indifference of Sheriff Rodgers and Chief Deputy Jailer Pritchett.   Gachett presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating the defendants' subjective awareness of a substantial risk of harm, each of which is a required element of his Eighth Amendment claim.   Additionally, the evidence is insufficient to establish causation.   In light of the foregoing, Sheriff Rodgers

and Chief Deputy Jailer Pritchett are entitled to summary judgment.  *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is ORDERED as follows:

1.  The federal claims against the Bullock County Commission be and are hereby dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) & (iii).

2.  The defendants' motion for summary judgment as to the remaining federal claims be and is hereby GRANTED in favor of Sheriff Rodgers and Chief Deputy Jailer Pritchett.

3.  The plaintiff's state law claims be and are hereby DISMISSED without prejudice.

A separate final judgment will be entered.

Done this 4th day of September, 2009.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE